IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ON COMMAND VIDEO CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | No. 09 C 3130 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SAM ROTI, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant, On Command Video Corporation ("OCV"), has filed a two-count complaint against Defendant/Counter-Plaintiff, Sam Roti ("Roti"), alleging fraud and, under a theory of piercing the corporate veil, seeking enforcement of a default judgment entered against Markwell Properties, LLC ("MP")–of which Roti is allegedly the alter ego–in Colorado state court and registered in the Circuit Court of Cook County, Illinois. In response to the complaint, Roti has filed counterclaims alleging fraudulent inducement and breach of contract. Roti has also raised seven affirmative defenses: (1) unclean hands, (2) fraud, (3) estoppel, (4) failure to mitigate damages, (5) waiver, (6) assumption of risk, and (7) failure to state a claim.

OCV has filed a motion to dismiss the counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) and to strike five of the affirmative defenses (unclean hands, fraud, estoppel, waiver, assumption of risk) pursuant to Fed. R. Civ. P. 12(f). For the reasons stated below, OCV's motion to dismiss Roti's counterclaims and to strike Roti's first, second, third, fifth, and sixth affirmative defenses is granted.

# FACTS

The facts alleged in the complaint are taken as true for purposes of the instant motion. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). OCV provides cable programming and pay-per-view movie services to hotels. Roti was the sole member and agent of MP. In addition, Roti formed Markwell Hillside, LLC ("MH"), through which he purchased Holiday Inn Hillside ("the Hotel") located at 4400 Frontage Road, Hillside, Illinois.

OCV had an existing contract with the previous owners of the Hotel, and MH assumed this contract when it bought the Hotel. In or about November 2004, OCV and MH attempted to renew the contract, but MH could not secure the necessary credit approval. Roti alleges that OCV's representative, David Redpath ("Redpath"), suggested that MP step into MH's shoes to save the contract, and that OCV was informed that MP owned few assets. Roti further alleges that OCV orally represented that Roti would have no personal liability for the contract. At the time, OCV allegedly knew this representation was false and intended to pursue Roti personally for debts incurred by MP.

On December 28, 2004, Roti signed a video services agreement ("the VSA") with OCV through August 16, 2012, as "Member" and "Registered Agent" of MP. OCV signed the VSA on February 4, 2005. No personal guaranty was signed.

In his answer to OCV's complaint, Roti denies that MP was served with OCV's May 3, 2007, complaint for breach of contract in the Denver County District Court in Colorado. MP failed to appear, and a default judgment was entered on October 16, 2007, in the sum of $261,058.31. On September 17, 2008, OCV registered the Colorado judgment in the Circuit Court of Cook County, Illinois. OCV brought the instant case to hold Roti personally liable for the judgment.

# DISCUSSION[1]

**Motion to Dismiss**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in the counter-plaintiff's favor. See McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). Nevertheless, the complaint must plead sufficient facts to suggest plausibly that the plaintiff is entitled to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955 (2007).

Allegations of fraud are subject to a heightened pleading standard. Fed. R. Civ. P. 9(b). Fraud must be pled with particularity, which means the complaint must allege the "who, what, when, where and how" of the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

**Fraudulent Inducement (First Counterclaim)**

Roti's first counterclaim alleges that MP, not Roti, entered into the contract with OCV based on a fraudulent representation that OCV would not enforce the contract against Roti. In addition to the likely conclusion that the alleged representation was a promise of future conduct that would not be recognized as fraudulent under Illinois law,[2] the first counterclaim appears to

---

[1] The parties agree that Colorado and Illinois law yield the same result. Thus, the court will apply the substantive law of Illinois, which likely applies to Roti's fraudulent inducement counterclaim.

[2] E.g., North Am. Plywood Corp. v. Oshkosh Trunk & Luggage Co., 263 F.2d 543, 545 (7th Cir. 1959) ("[I]t is the law of Illinois that a false representation must be a representation as to an existing or past fact and no [*sic*] a mere promise to do some act in the future. A failure to comply with a future promise does not constitute fraud. The general rule is that to amount to fraud there must be a willful, false representation as to an existing or past fact.").

be nothing more than a defense to the underlying contract dispute. This issue could and should have been litigated in the actions against MP, the contracting party.

Roti denies that MP was served with OCV's complaint for breach of contract in the Colorado proceeding. Although a defendant who is sued in a court that lacks personal jurisdiction over the defendant "is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds," Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982),[3] in the instant case the judgment debtor (MP) is not before the court. The Circuit Court of Cook County, not this court, is the enforcing court with respect to the Colorado judgment against MP. If in fact that judgment is void for lack of service, it is the Illinois court that must make that decision.

Until and unless the Illinois judgment is vacated, this court must give it full faith and credit. See, e.g., Licari v. City of Chicago, 298 F.3d 664, 666 (7th Cir. 2002). The only issue before this court remains whether Roti is the alter ego of MP. For the reasons stated above, OCV's motion to dismiss Roti's first counterclaim is granted.

**Breach of Contract (Second Counterclaim)**

Roti alleges that by suing him on an alter ego theory, OCV breached an indemnification provision in the VSA:

> **19.1 General.** Subject to any other limitation in this Agreement, each party shall indemnify, defend and hold harmless the other party and its shareholders, officers, directors, employees, parent companies and affiliates from any and all Losses arising out of, or in connection with, that party's breach of the terms of this Agreement.

---

[3] See also In re Joint Eastern & Southern Districts Asbestos Litigation, 22 F.3d 755, 762 (7th Cir. 1994) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity. When, in an enforcement proceeding, the validity of the judgment is questioned on this ground, the enforcing court has the inherent power to void the judgment, whether the judgment was issued by a tribunal within the enforcing court's domain or by a court of a foreign jurisdiction, unless inquiry into the matter is barred by the principles of res judicata.").

Thus, the promise not to sue must be part of the VSA for Roti to recover for "[a] party's breach of the terms of this Agreement."

In interpreting a contract under Illinois law, the court first determines if the language of the contract is ambiguous. Lewitton v. ITA Software, Inc., 585 F.3d 377, 379 (7th Cir. 2009). "An ambiguous contract is an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." Hampton v. Ford Motor Co., 561 F.3d 709, 714 (7th Cir. 2009) (internal citation omitted). The court must enforce an unambiguous contract as written and look to extrinsic evidence only if the contract's language is susceptible to more than one interpretation. Lewitton, 585 F.3d at 380.

The VSA is not ambiguous. It includes modification and integration provisions:

**21.3 Modification of Agreement.** This Agreement may not be modified or amended except by a written agreement signed by both parties.
**21.9 Entire Agreement.** Subject to Section 3.3, this Agreement and the Exhibits attached hereto set forth the entire agreement and understanding of the parties relating to the subject matter herein, and merges and supersedes all prior discussions and understandings between the parties related thereto, whether written or oral.

In GreatAmerica Leasing Corp. v. Cozzi Iron & Metal, Inc., 76 F. Supp. 2d 875 (N.D. Ill. 1999), the defendant entered into a series of contracts for the lease of copying equipment after a sales representative allegedly stated that the defendant would only be responsible for the actual number of copies made. The contracts as written, however, required a minimum monthly payment, regardless of whether any copies were made. Id. at 877. In response to the plaintiff's claim for amounts past due, the defendant filed counterclaims and affirmative defenses based on fraudulent inducement.

While the defendant argued that the parties' complete understanding included the oral agreements, the GreatAmerica court pointed to a modification clause that "unambiguously indicates that the writings reflect the complete understanding of the parties, which would be the

normal presumption in Illinois contract law in any event." Id. at 878. Further, the court was not persuaded by the defendant's argument that fraudulent inducement justifies consideration of the oral agreements. Although the defendant in GreatAmerica was presented with several contracts, the assessment that the defendant "cannot have reasonably relied on representations that were directly contrary to the plain language of the contracts it signed" is applicable to the instant case. Id. The VSA as written does not include a promise not to sue and, in plain language, the VSA specifically excludes all oral agreements.

Like the GreatAmerica court, this court is confronted with a contract interpretation issue, not a fraudulent inducement (i.e., tort) issue, in the second counterclaim. Thus, the modification and integration provisions are crucial in a dispute over the meaning of the VSA. Moreover, a finding of fraudulent inducement in this context would render the VSA voidable; it would not make the oral promise part of the VSA. See Tower Investors, LLC v. 111 East Chestnut Consultants, Inc., 371 Ill. App. 3d 1019, 1030 (1 Dist. 2007); Seward v. B.O.C. Div. of General Motors Corp., 805 F. Supp. 623, 630 (N.D. Ill. 1992).

As the court has already found, the alleged oral promise is not part of the VSA. Further, although the VSA does not explicitly provide OCV with the right to sue Roti, OCV filed its complaint under a theory of piercing the corporate veil. The absence of an written right to sue does not affect OCV's ability to bring this claim, which is extra-contractual. For the reasons stated above, OCV's motion to dismiss Roti's second counterclaim is granted.

**Motion to Strike Affirmative Defenses**

Motions to strike affirmative defenses are generally disfavored in this circuit because they are often employed for the sole purpose of causing delay. See Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). Such motions will not be

granted "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., Inc., 944 F.2d 1388, 1400 (7th Cir. 1991) (internal citations omitted). Yet, it is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case. See Household Financial Services, Inc. v. Northeastern Mortgage Inv. Corp., 2000 WL 816795, at *1 (N.D. Ill. June 22, 2000) (citing Heller, 883 F.2d at 1295).

Since affirmative defenses are subject to federal pleading requirements, a defense must set forth a "short and plain statement" of all the material elements; bare legal conclusions are insufficient. See Heller, 883 F.2d at 1294; Renalds v. S.R.G. Restaurant Group, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000); Fed. R. Civ. P. 8(a). A three-part test is applied to affirmative defenses subject to a motion to strike:

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge–in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.

Renalds, 119 F. Supp. 2d at 802-03 (citing Heller, 883 F.2d at 1294).

OCV argues that Roti's first, second, third, fifth, and sixth affirmative defenses should be stricken because they are based on the fundamentally flawed allegations espoused in Roti's counterclaims above. Specifically, these five affirmative defenses are based on OCV's alleged oral promise not to sue Roti under the VSA.

Regardless of whether Roti has met the first and second prongs of the Renalds test, the court must strike his first, second, third, and fifth affirmative defenses because they cannot withstand a Rule 12(b)(6) challenge. Under Twombly, 550 U.S. at 555-56, Roti must plead sufficient facts to suggest plausibly that he is entitled to relief. Since the oral promise is not part

of the VSA, there is no set of facts under the pleadings that could be proved in support of unclean hands, fraud, estoppel, and waiver.

The sixth affirmative defense, assumption of the risk, is not a viable defense to a claim for intentional tort, including fraud, or breach of contract. <u>Chamberlain Mfg. Corp. v. Maremont Corp.</u>, 1993 WL 535420, at *6 (N.D. Ill. Dec. 19, 1993). The motion to strike is therefore granted as to the sixth affirmative defense as well.

## CONCLUSION

For the reasons stated above, OCV's motion to dismiss Roti's counterclaims and to strike Roti's first, second, third, fifth, and sixth affirmative defenses is granted.

**ENTER:** **April 30, 2010**

_____
**Robert W. Gettleman**
**United States District Judge**